1

**Quarles & Brady** LLP
Firm State Bar No. 00443100
Renaissance One, Two North Central Avenue
Phoenix, Arizona  85004-2391
TELEPHONE 602.229.5200

2

3

Nicole France Stanton (#020452)
nicole.stanton@quarles.com
Michael S. Catlett (#025238)
michael.catlett@quarles.com

4

5

Attorneys for Defendants Phoenix School of
Law, LLC and InfiLaw Corporation

6

7                     **UNITED STATES DISTRICT COURT**

8                         **DISTRICT OF ARIZONA**

9

| | |
|---|---|
| Michael O'Connor, an Arizona resident; and Celia Rumann, an Arizona resident, | Case No.:  13-cv-01107-SRB |
| Plaintiffs, | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULES 12(B) AND 12(B)(6)** |
| vs. | |
| Phoenix School of Law, LLC, a Delaware limited liability company, InfiLaw Corporation, a Delaware Corporation, | **(Assigned to the Honorable Susan Bolton)** |
| Defendants. | |

10

11

12

13

14

15        In their First Amended Complaint, Plaintiffs, Michael O'Connor and Celia

16   Rumann (collectively, "Plaintiffs"), claim that Defendants, Phoenix School of Law, LLC

17   (the "School") and InfiLaw Corporation ("InfiLaw"), violated an employment contract by

18   presenting "an 'appointment letter' rather than an employment contract in the form and

19   style required by the Faculty Handbook."  (Doc. 7, ¶ 122.)  Plaintiffs allege therein that

20   the appointment letter violated their contractual rights because the letter did not contain

21   all necessary terms.

22        The School and InfiLaw have moved to dismiss Plaintiffs' breach of contract

23   claims on grounds that, contrary to Plaintiffs' position, the appointment letter was a valid

24   offer of employment that contained all material terms.  Plaintiffs, however, rejected that

25   valid offer and countered with a contract containing different terms.  The School validly

26   rejected that counteroffer.

27        In their Response, Plaintiffs appear to have abandoned the theory that the School's

28   appointment letter was invalid because it did not contain all terms required by the Faculty

QB\152522.00002\22110846.1

1    Handbook.  Instead, they assert a new theory -- that the appointment letter "repudiated"

2    their rights because it omitted certain terms that were contained in the contracts Plaintiffs

3    signed for the prior academic year, in 2012-2013.  But, the appointment letter did not

4    omit any of the rights Plaintiffs identify.  Moreover, nothing in the Faculty Handbook

5    required the School to provide Plaintiffs with identical contract terms every year.  In fact,

6    the Faculty Handbook says just the opposite:  "A tenure contract is for an academic year

7    and gives the faculty member the contractual right to be re-employed for succeeding

8    academic years . . . but subject to the terms and conditions of employment which exist

9    from academic year to academic year."   Plaintiffs' new theory should fare no better than

10   their old theory.

11          Plaintiffs have also improperly named InfiLaw as a defendant in this breach of

12   contract action despite that it was not Plaintiffs' employer or a party to any relevant

13   agreement.  Plaintiffs appear to argue that the Court should pierce the corporate veil and

14   require InfiLaw to remain in the case because the School was "a mere instrumentality" of

15   InfiLaw.  Not only do the allegations contained in the First Amended Complaint not

16   plausibly support Plaintiffs' "instrumentality" theory, but Plaintiffs do not even mention,

17   and the First Amendment does not support, the fraud element of a veil piercing claim.

18          Finally, Plaintiffs' claims fail because they commenced this litigation without

19   exhausting the School's mandatory grievance process.  Plaintiffs argue that they were

20   excused from exhaustion because the School's grievance procedures are not mandatory.

21   Plaintiffs' position is inconsistent with binding and persuasive authority and the language

22   of the Faculty Handbook.

23   **I.     The Appointment Letter Did Not Repudiate Plaintiffs' Contract Rights.**

24          In May 2013, the School attempted to streamline its contract renewal process by

25   providing its faculty with an appointment letter, which provided certain basic terms and

26   incorporated by reference Chapter 2 of the Faculty Handbook.  Plaintiffs rejected that

27   appointment letter because "[c]ertain material terms . . . are left blank in the form contract

28   and therefore not incorporated by the appointment letter."   (Doc. 13, Exhs. E, F.)

1    Plaintiffs instead sent their own contracts with terms materially different than those

2    contained in the appointment letter.   Then, after the School rejected Plaintiffs'

3    counteroffers, Plaintiffs' counsel wrote to the School, again complaining that "the

4    Section 2.2.5 form contract omits material terms.  Specifically, the dates of employment,

5    title and rank of the faculty member, how an employee may terminate a contract, and

6    whether the contract is subject to certain conditions are left blank." (*Id.*, Exh. F.)

7         Despite rejecting the School's offer of employment, Plaintiffs commenced this

8    lawsuit.  In their First Amended Complaint, Plaintiffs again complain that "[t]he form of

9    contract that is contained in Chapter II of the Faculty Handbook contained blanks where

10   material terms are require to be executed by the parties." (*Id.* ¶ 95.)  Plaintiffs allege that

11   "material terms of their employment -- dates of employment, title and rank, whether the

12   contract is subject to conditions, for example -- would not have been settled because those

13   are some of the blank terms in the form of contract appearing at Section 2.2.5." (*Id.* ¶ 98.)

14   Nowhere in their correspondence with the School or their First Amended Complaint did

15   Plaintiffs assert a breach of contract because the appointment letter differed from the

16   contract they signed in 2012-2013.

17        The School and InfiLaw established in their Motion to Dismiss that the

18   appointment letter and Chapter 2 of the Faculty Handbook included all material terms,

19   including those regarding Plaintiffs' dates of employment, title and rank, and how an

20   employee may terminate a contract.[1]  Plaintiffs do not appear to argue otherwise.

21        Instead, Plaintiffs now claim that the School "repudiated" their contractual rights

22   by providing them with 2013-2014 contracts containing terms that were different than

23   their 2012-2013 contracts.  Like Plaintiffs' "omitted terms" theory, this new theory fails

24   on several fronts.

25   _____

26   [1] Admittedly, Plaintiffs still appear to cling to the fact that the School's form contract left the
     special conditions field blank while their proposed contract contained the word "none."  There is
     absolutely no difference between the two and one would hope that Plaintiffs have not pressed a
27   federal lawsuit against the School and InfiLaw (along with complaints to the Equal Employment
     Opportunity Commission and the National Labor Relations Board) because of that immaterial
28   difference.

QB\152522.00002\22110846.1

1        First, even assuming that Plaintiffs are correct that the appointment letter offered

2  less protections than Plaintiffs' 2012-2013 contract, the appointment letter was not a

3  "repudiation" of the parties' existing contract rights.[2]  A party repudiates a contract "when

4  he or she provides a 'positive and unequivocal manifestation' that the party will not

5  perform when his or her duty to perform arises."  *Ratliff v. Hardison*, 219 Ariz. 441, 444,

6  199 P.3d 696, 699 (App. 2008).  "[A] mere offer to perform on terms other than those

7  contained in the agreement, at least if the offer is made in good faith," is not a

8  repudiation. *United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 279, 681 P.2d

9  390, 431 (App. 1983).  The School hardly provided a "positive and unequivocal"

10  manifestation that it would not perform.  To the contrary, the School offered Plaintiffs a

11  tenured position for a full academic year, along with a six-figure salary and all of the

12  other rights and benefits contained in Chapter 2 of the Faculty Handbook.  Even assuming

13  that Chapter 2 contained rights and benefits slightly different from Plaintiffs' 2012-2013

14  contract, the School's appointment letter was no repudiation.[3]

15        Second, the Faculty Handbook does not require that the School provide contracts

16  to tenured members of the faculty that are identical to those provided the year prior.  The

17  Faculty Handbook actually contemplates that contract terms may vary from year to year.[4]

18  The Faculty Handbook states that tenure status "does not exist apart from a legally

19  subsisting contractual agreement."  (Doc. 13, Exh. A, § 2.2.4.)  More importantly, the

20  Faculty Handbook explains that tenure contracts are "subject to the terms and conditions

21  of employment which exist from academic year to academic year."[5]  (*Id.*)  The School's

---

[2] Plaintiffs claim that the School's cover letter admitted that the appointment letter is not a contract.  What the appointment letter actually says is that it is being sent "rather than lengthy contracts."  That explanation is far from an admission that the appointment letter is not a contract. In fact, the appointment letter expressly states that it constitutes an "agreement between you and Phoenix School of Law." (*See* Doc. 13, Exhs. C &D.)

[3] Plaintiffs' arguments are internally inconsistent.  First, Plaintiffs argued that the School breached the Faculty Handbook because the appointment letter was not identical to the form contract contained in the Faculty Handbook.  Now, they argue that the appointment letter breached the Faculty Handbook because it did not contain terms in addition to those in the Faculty Handbook. Plaintiffs cannot have it both ways.

[4] If one were to accept Plaintiffs' position, the School would be forever barred from altering the initial terms of tenured faculty members' contracts without committing a breach of contract.

[5] *Demasse v. ITT*, 194 Ariz. 500, 509-510, 984 P.2d 1138, 1147-48 (1999) is inapposite.  The

        QB\152522.00002\22110846.1

1    appointment letter provided Plaintiffs with the terms and conditions of employment for

2    the 2013-2014 academic year.  As explained in the Motion to Dismiss, those terms and

3    conditions were fully consonant with the Faculty Handbook.[6]

4           Third, contrary to Plaintiffs' position (at Doc. 15 p.6), the appointment letter did

5    not repudiate Plaintiffs' contractual rights or provide them with less protections.

6           **Tenure Contract.**  Plaintiffs complain that the appointment letter did not offer

7    Plaintiffs a "tenure contract."  The appointment letter made clear, however, that Plaintiffs

8    were being offered a "tenure position."   Other than semantics, there is no practical

9    difference between a "tenure contract" and a "tenure position," and plaintiffs do not even

10   attempt to explain how offering a "tenure position" was a repudiation of their rights.

11          **Procedures Applicable Only to the School's Non-Faculty Staff.**  Plaintiffs argue

12   that the appointment letter repudiated their rights because it incorporated all of Chapter 2

13   of the Faculty Handbook, which contains procedures not applicable to tenured faculty.

14   Like the appointment letter, Plaintiffs' 2012-2013 contract also provided that "[t]he

15   Contract and Employee's employment with the School are subject also to the provisions

16   of Chapter II of the Faculty Handbook."  (*See* Doc. 15, Exh. A.)  Thus, Plaintiffs' 2012-

17   2013 contract also "incorporated policies and procedures applicable only to Defendants'

18   non-faculty staff."  In this respect, therefore, the appointment letter was no different from

19   Plaintiffs' prior contract, and it was certainly not a repudiation of their rights.

20          **Contract Term.**  Plaintiffs complain that the term of their 2012-2013 contracts ran

21   from August 1 to May 1 while the term of the 2013-2014 contracts would have run from

22   August 19 through May 19.  Although Plaintiffs are correct that the 2013-2014 term

23

24   _____

     appointment letter was not a unilateral modification of Plaintiffs' 2012-2013 contract.  It was an
25   offer of an employment for 2013-2014, and to the extent that the appointment letter contained
     lesser protections than the 2012-2013 contract (which it did not), the consideration for those
26   changes was Plaintiffs' employment, along with their six-figure salary and benefits, for the 2013-
     2014 academic year.
27   [6] The documents needed to verify that the appointment letter did not run afoul of the Faculty
     Handbook are each incorporated by reference in the First Amended Complaint.  Plaintiffs do not
28   dispute that the Court may refer to each of the documents attached to Defendants' Motion to
     Dismiss in rendering its decision.

1   would have started eighteen days later than the 2012-2013 term had begun, it also would

2   have ended eighteen days later than the 2012-2013 term had ended.  Thus, the 2012-2013

3   term was 273 days long and the 2013-2014 term would have been 273 days long.  The

4   difference in the contracts terms was, therefore, superficial at best.

5       **Tenure Review Timeframe.**  Plaintiffs claim that the appointment letter "did not

6   identify a tenure review timeframe."  Plaintiffs' 2012-2013 contract stated that "the Dean

7   and Faculty Development Committee will conduct an extensive review of each tenured

8   faculty member every four (4) years."  (*See* Doc. 15, Exh. A.)  The appointment letter

9   incorporated Chapter 2 of the Faculty Handbook, which provides that "the Dean and

10  Faculty Development Committee will conduct an extensive review of each tenured

11  faculty member every four (4) years." (*See* Doc. 13, Exh. A, § 2.5.6.)  Thus, Plaintiffs are

12  incorrect in alleging that the appointment letter did not identify a tenure review

13  timeframe; the appointment letter identified the same timeframe identified in Plaintiffs'

14  2012-2013 contract and the Faculty Handbook.

15      **Notice Required to Terminate.**  Lastly, Plaintiffs assert that the appointment

16  letter provides less protections because it requires 90 days notice from Plaintiffs to

17  terminate and the 2012-2013 contract required 120 days.  As Defendants alluded to in

18  their Motion to Dismiss, this change was actually beneficial to Plaintiffs.  (*See* Doc. 13, p.

19  15 n.9.)  Pursuant to the appointment letter, Plaintiffs would have had greater flexibility

20  to terminate the contract in that they would have had to give 30 days less notice than

21  required under their 2012-2013 contracts.

22      In sum, the Faculty Handbook expressly contemplates that the terms of Plaintiffs'

23  contracts would vary from year to year.  Nonetheless, not only did the appointment letter

24  contain all material terms, but those terms also did not provide Plaintiffs with less

25  protections than their prior contracts.  Plaintiffs chose, however, to reject the School's

26  valid employment offer and make a counteroffer, which the School was in no way

27  required to accept.  Plaintiffs' choice should not subject the School and InfiLaw to

28  liability for breach of contract or breach of the implied covenant of good faith and fair

1    dealing.  *See Foster v. Ohio State Univ.*, 534 N.E.2d 1220, 1222 (Ohio App. 1987).

2    **II.      Plaintiffs Cannot Pierce the Corporate Veil.**

3          Plaintiffs have named InfiLaw as a defendant.  InfiLaw, however, is not, and was

4    not, a party to any agreements at issue in this lawsuit.  Plaintiffs do not claim otherwise.

5          Plaintiffs now clarify that InfiLaw is a proper party to this action under a corporate

6    veil piercing theory because the School is "a mere instrumentality of InfiLaw."  (Doc. 15

7    at 9.)   Plaintiffs' First Amended Complaint does not contain allegations plausibly

8    supporting that the School is an instrumentality of InfiLaw.  For support, Plaintiffs cite to

9    paragraph 24 of the First Amended Complaint, which merely alleges that InfiLaw

10   prepared the Faculty Handbook.  Even assuming that allegation is true, the Faculty

11   Handbook supports that the School is not InfiLaw's instrumentality.   The Faculty

12   Handbook indicates on its front cover that the Handbook was approved by the School's

13   faculty, and the Handbook makes clear that it "reflects the faculty-related policies of the

14   Phoenix School of Law, LLC."  (Doc. 13, Exh. A pp. 1,7.)  The Faculty Handbook also

15   explains that the School is governed by its own independent Board of Directors, which

16   "exercises all of the powers, rights and privileges appertaining to the company under the

17   laws of the State of Delaware and the United States."  (*Id.*, Exh. A, § 1.4.2.)  The Board

18   of Directors formulates "the general, educational, and financial policies," which are then

19   carried out by the School's administration and faculty.  (*Id.*)  The School also had, at all

20   relevant times, a Board of Advisors that made recommendations to the Board of Directors

21   "on academic policy, standards, and processes."  (*Id.* § 1.4.2.2.)

22         Plaintiffs also cite to paragraphs 87 and 89 of the First Amended Complaint.

23   Those paragraphs merely allege that Plaintiffs had contracts with "Defendants" in the

24   form of tenure contracts and the Faculty Handbook.  Even a cursory review of those

25   documents reveals Plaintiffs' allegations to be false -- only the School is a party to those

26   contracts. (*See* Doc. 13, Exh. A; Doc. 15, Exh. A.)

27         Finally, Plaintiffs rely upon some discussion in the Faculty Handbook about the

28   support and administrative services provided by an InfiLaw entity.  The portions of the

1   Faculty Handbook that Plaintiffs rely upon do not reference InfiLaw Corporation, the

2   defendant in this lawsuit.  (*See* Doc. 13, Exh. A § 1.4.1.)   Regardless, simply providing

3   support and administrative services is insufficient to hold one of the School's owners

4   liable for the School's alleged breach of contract.

5          Even assuming Plaintiffs have included sufficient allegations that the School is the

6   mere instrumentality of InfiLaw, they have not included sufficient allegations to meet

7   another essential element of a corporate veil piercing claim, namely that recognizing the

8   corporate form would sanction a fraud or injustice.  "[A]n alter ego theory requires not

9   only a showing of unity of control but also proof that observance of the corporate form

10  would sanction a fraud or promote injustice."  *Horizon Res. Bethany Ltd. v. Cutco Indus.*,

11  180 Ariz. 72, 75, 881 P.2d 1177, 1180 (App. 1994).  As noted in Fletcher Cyclopedia of

12  the Law of Private Corporations:

13         [C]ourts usually apply more stringent standards to piercing the corporate
       veil in a contract case than they do in tort cases. . . . [O]ne who has
14     contracted with a selected party and received the promise bargained for
       should not be allowed to look to another merely because he or she is
15     disappointed in the selected party's performance.  Thus, under contract law,
       the disappointed one may not hold the other liable without additional
16     compelling facts.   Generally, courts find these "additional compelling
       facts" in affiliated corporation cases where the plaintiff has acted to his or
17     her own detriment upon representations made by officers of the parent
       corporation concerning control and ownership of the subsidiary and the
18     payment of its debts.

19  1 William M. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 41.85.

20         Here, Plaintiffs have not alleged, and cannot allege, that observance of the School's

21  corporate form would sanction a fraud or injustice.  They also do not allege with

22  specificity that the officers of InfiLaw made fraudulent statements to Plaintiffs regarding

23  control and ownership of the School or payment of the School's debt.  Finally, Plaintiffs

24  do not plausibly allege that they relied on any such statement to their detriment.  InfiLaw

25  should, therefore, be dismissed from this action.  *See SE Tex. Inns, Inc. v. Prime*

26  *Hospitality Corp.*, 462 F.3d 666, 679 (6th Cir. 2006) (affirming dismissal of corporate

27  defendant because the "conclusory allegations, couched in terms of a contractual breach,

28  [were] not tantamount to the fraud or injustice required to pierce the corporate veil").

QB\152522.00002\22110846.1

1   **III.**    **<u>Plaintiffs Were Required to Exhaust the School's Grievance Procedures.</u>**

2         The Faculty Handbook contains detailed grievance procedures, which Plaintiffs

3   were required to exhaust prior to commencing this lawsuit.  Not only does the case law

4   from Arizona and other jurisdictions support such a requirement, but the requirement is

5   good policy.  (*See* Doc. 13 at 10-12 (citing cases and discussing policy).)

6         Plaintiffs claim that they were not required to exhaust the Faculty Handbook's

7   grievance procedures because those procedures are permissive.  Plaintiffs principally rely

8   upon *Demasse v. ITT*, 194 Ariz. 500, 515, 428 P.2d 1138, 1153 (1999), but that case is

9   distinguishable.  The grievance procedure at issue in *Demasse* required employees to

10  discuss any problems with their supervisor.  *Id.* at 514-15, 428 P.2d at 1152-53.  The

11  Court rejected the employer's exhaustion argument because "once terminated, an

12  employee no longer has a supervisor.  Thus the designated complaint avenue is cut off."

13  *Id.* at 515, 984 P.2d at 1153.  Here, Plaintiffs were required to bring their grievance to the

14  attention of the Dean, who would have then been required to investigate the matter and

15  respond in writing.  (*See* Doc. 13, Exh. A, § 2.16.6.1 pp. 104-05.)  Unlike in *Demasse*,

16  Plaintiffs' designated complaint avenue to the Dean was not cut off once Plaintiffs

17  rejected the School's employment offer.

18        Moreover, unlike in *Demasse*, the requirement that Plaintiffs submit a formal

19  grievance to the Dean was not couched in permissive terms.  In Plaintiffs' case, because

20  the Dean was their direct supervisor, the Faculty Handbook makes mandatory that their

21  grievances be presented to the Dean in writing:

22        [T]he grievant <u>shall</u> formalize the grievance and file it with the Dean . . . .
          The formalized grievance <u>shall</u> be presented in writing.   The written
23        submission <u>shall</u> state the specific policy, regulation, or procedure alleged
          to have been misinterpreted, misapplied, or violated, the effect on the
24        grievant, and the relief requested.

25  (*Id.*, Exh. A, § 2.16.6.2.)  This is a far cry from the permissive provisions at issue in

26  *Demasse*.

27        This case is more akin to this Court's decision in *Moses v. Phelps Dodge Corp.*,

28  818 F. Supp. 1287 (D. Ariz. 1993), where the grievance procedures were held mandatory.

QB\152522.00002\22110846.1

1   The employee handbook in that case stated that the grievance procedures "*constitute the*

2   *sole and exclusive procedure* for the processing and resolution of any controversy,

3   complaint, misunderstanding or dispute that may arise concerning any aspect of your

4   employment or termination from employment." *Id.* at 1290-91.  The Faculty Handbook

5   in this case states that "[t]hese procedures <u>shall</u> be the method for resolving <u>all</u>

6   grievances."  (Doc. 13, Exh. A, § 2.16.1 (emphasis added).)   This case is, therefore,

7   governed by *Moses*, not *Demasse*.[7]

8          In a last ditch effort to avoid dismissal, Plaintiffs argue that their counsel's May 10,

9   2013 letter constitutes a formal grievance to the Dean.  That argument similarly fails.

10   Counsel's letter was written before the School even rejected Plaintiffs' counteroffer of

11   employment and did not indicate anywhere that it constituted a formal grievance or was

12   intended to initiate the grievance process under the Faculty Handbook.  The Court should

13   not accept Plaintiffs' *post hoc* claim that they exhausted their remedies, and should

14   dismiss Plaintiffs' complaint for failure to exhaust.

15   **IV.    Conclusion.**

16          For the foregoing reasons, and those contained in Defendants' Motion to Dismiss,

17   Defendants respectfully request that the Court dismiss Plaintiffs' First Amended

18   Complaint with prejudice.  Defendants further request that the Court award Defendants

19   their attorneys' fees and costs as the prevailing parties in this action arising out of

20   contract.

21   RESPECTFULLY SUBMITTED this 9th day of August, 2013.

22                                                 QUARLES & BRADY LLP
                                                   Renaissance One, Two North Central Avenue
23                                                 Phoenix, Arizona  85004-2391

24                                                 By *s/ Michael S. Catlett*
                                                       Nicole France Stanton
25                                                     Michael S. Catlett
                                                   *Attorneys for Defendants*

26   _____

27   [7] Admittedly, the Faculty Handbook does not contain the adjectives "sole and exclusive" when
     referring to the grievance procedures.  Plaintiffs cite to no case, however, holding that those
     adjectives, and only those adjectives, must be used in order to make a grievance procedure
28   mandatory.

QB\152522.00002\22110846.1

**CERTIFICATE OF FILING/MAILING**

1

2      I hereby certify that on August 9, 2013, I electronically transmitted the attached

3   document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4   Notice of Electronic Filing to all counsel identified on the Court-Generated Notice of

5   Electronic Filing.

6

7   *s/ Frances Fulwiler*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

QB\152522.00002\22110846.1